**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MICHAEL SAMPSON, et al., | : | |
|  | : | |
| Plaintiffs, | : | Civil Action No. 14-5983 (ES) |
|  | : | |
| v. | : | OPINION |
|  | : | |
| JACQUELINE M. PIERRO, et al., | : | |
|  | : | |
| Defendants. | : | |

**SALAS, DISTRICT JUDGE**

This matter is before the Court upon Defendants Robert Anzilotti, Brian Griefer, Joe Hornyak, James McMorrow, Leticia Verpent's (collectively, "Defendants") motion to dismiss Plaintiff Michael Sampson's ("Plaintiff") Amended Complaint under Federal Rules of Civil Procedure 12(b)(6) and (b)(1). (D.E. No. 22, Defendants' Motion to Dismiss ("Mot.")). Plaintiff filed Opposition (D.E. No. 23), and Defendants filed a Reply (D.E. No. 24). Having considered the submissions made in support of and in opposition to Defendants' motion, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b).

As set forth below, the Court GRANTS-in-part and DENIES-in-part Defendants' motion to dismiss.

**I.     FACTUAL BACKGROUND**[1]

On July 8, 2012, at approximately 1:30 p.m., Defendants Hornyak (an undersheriff with the Bergen County Sheriff's Office), Anzilotti (a detective with the Bergen County Prosecutor's

---

[1] The Court must accept Plaintiff's factual allegations as true for purposes of resolving the pending motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

1

Office), Griefer (a detective with the Bergen County Prosecutor's Office), McMorrow (a detective with the Bergen County Prosecutor's Office), McKay (an officer employed by the Borough of Cliffside Park), and John Does 1-10, conducted a traffic stop of Plaintiff's wife (Ms. Jacqueline Pierro) and Plaintiff's child, in Lodi, New Jersey. (D.E. No. 18. Amended Complaint ("Am. Compl.") ¶¶ 3-5, 6, 12). Defendants arrested Ms. Pierro and requested, under the threat of force, that Ms. Pierro remove her child from the vehicle and place the child in the custody of an acquaintance. (*Id.* ¶ 12).

Ms. Pierro was subsequently taken to a "law enforcement building," where she was interrogated by Defendants Hornyak, Anzilotti, Griefer, McMorrow, MacKay and John Joes 1-10. (*Id.* ¶ 13). Defendants threatened to take unlawful custody of Ms. Pierro's child if she did not waive her right to remain silent and her right to an attorney. (*Id.* ¶ 14). Ms. Pierro subsequently waived her rights and answered Defendants' questions. (*Id.* ¶ 15). Ms. Pierro's statements were then used to obtain arrest warrants for her, for child endangerment and hindering apprehension, and Plaintiff, for murder and other charges. (*Id.*).

At approximately 9:00 p.m., on July 8, 2012, the Bergen County S.W.A.T. (which included Defendants Hornyak, Anzilotti, Griefer, McMorrow, MacKay and John Does 1-10) unlawfully entered a Bergen County residence in which Plaintiff and another one of Plaintiff's children were currently residing. (*Id.* ¶ 16). Defendants carried assault rifles and wore armor while they arrested Plaintiff. (*Id.*). During the arrest, Defendants assaulted Plaintiff while he was lying on his stomach. (*Id.* ¶ 17). Defendants seized Plaintiff's property, including a cell phone, cash, and other items. (*Id.*). Defendant Hornyak spit on Plaintiff and assaulted him. (*Id.*). Defendants Hornyak, Anzilotti, Griefer, McMorrow, MacKay and John Does 1-10, in concert with Defendant Leticia Verpent (an employee of the New Jersey Division of Child Protection and Permanency) seized

2

Plaintiff's child who was present with Plaintiff in the residence when he was arrested. (*Id.* ¶¶ 7, 18).

During the transportation of Plaintiff to the Bergen County Prosecutor's Office, Defendant Hornyak interrogated Plaintiff without advising him of his *Miranda* rights. (*Id.* ¶¶ 19-20). Defendants Hornyak and Anzilotti made several racist remarks and comments to Plaintiff, who is of Dominican and Hispanic descent. (*Id.* ¶ 21). Defendants Hornyak and Anzilotti emphatically stated that they agreed to violate Plaintiff Sampson's constitutional rights because Plaintiff was not white and was a minority in majority-white Bergen County. (*Id.* ¶ 21). Defendants then seized Plaintiff's DNA through use of a buccal swab without a warrant or consent. (*Id.* ¶ 24). Defendant Hornyak explicitly stated that he would cause a judge to issue a $3,000,000 bail against Plaintiff if Plaintiff did not waive his constitutional rights. (*Id.* ¶ 25).

Plaintiff alleges claims for false arrest, unlawful seizure of property, excessive force, conspiracy pursuant to 42 U.S.C. § 1985, violation of right to familial integrity, Fifth Amendment due process rights, and New Jersey Civil Rights Act violations. Plaintiff is seeking monetary, declaratory and injunctive relief.[2] (*Id.* at 10-11).

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

[2]   Defendants base the Federal Rule of Civil Procedure 12(b)(1) portion of their motion on the fact that Plaintiff lacks standing to seek injunctive relief, because Plaintiff's future injuries are "conjectural" and "hypothetical." (Mot. at 10). While the Amended Complaint is not extremely clear, it appears that Plaintiff is only seeking injunctive relief against Defendant Verpent. (Am. Compl. ¶¶ 4-10). As discussed below, all claims against Defendant Verpent will be dismissed and therefore any requests for injunctive relief are moot.

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Determining whether there is "a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

So, the inquiry is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus*, 641 F.3d at 563.

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.") (internal quotation marks, textual modifications and citations omitted)).

**III.     DISCUSSION**

    **A.  Ms. Pierro**

At the outset, as previously explained to Plaintiff (*see* D.E. No. 2), Federal Rule of Civil Procedure 11(a) requires that every pleading "be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented."  Moreover, "a pro se litigant who is not an attorney may not represent someone else in federal court." *McCain v. Episcopal Hosp.*, 350 F. App'x 602, 604 (3d Cir. 2009) (per curiam) (citations and internal quotation marks omitted).  Because Ms. Pierro has not signed the Amended Complaint, she is not considered a plaintiff in this matter and Plaintiff is not entitled to bring claims on her behalf.  Any claims Plaintiff attempted to raise on behalf of Ms. Pierro are dismissed *without prejudice*.

    **B.  False Arrest**

In the Amended Complaint, Plaintiff alleges that he was arrested without probable cause.  It appears that he is alleging the arrest was improper because the "coerced answers" obtained during Ms. Pierro's interrogation were later used to secure the arrest warrant from the state court judge.  (*See* Am. Compl. ¶ 15).  Plaintiff also alleges that Defendants used other "false statements" to obtain the arrest warrant.  (*Id.*).

Where an arrest is made pursuant to a warrant, a plaintiff in a § 1983 action for false arrest must adequately plead that "(1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" *Strunk v. E. Coventry Twp. Police Dep't*, No. 15-2313, 2016 WL 7378075, at *2 (3d Cir. Dec. 20, 2016) (citing *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir.

5

2000)); *Shaffer v. City of Pittsburgh*, 650 F. App'x 111, 113-14 (3d Cir. 2016) (citing *Wilson*, 212 F.3d at 786-87).

Here, as correctly argued by Defendants, Plaintiff has not sufficiently alleged that the coerced statements and falsehoods conveyed to the state court judge in order to obtain the arrest warrant were material to the finding of probable cause. In fact, Plaintiff does not provide any information about the probable cause presented to the judge. It is not even clear what allegedly false information Ms. Pierro provided that led to the issuance of the warrant. Nor is it clear what "other false statements" were also submitted. Instead, Plaintiff just states in a conclusory manner that, because Plaintiff and Ms. Pierro maintain that they did not commit the crimes, there was no probable cause. (Am Compl. ¶¶ 28, 30). However, that is not sufficient under *Iqbal*. *See* 556 U.S. at 678; *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997). Therefore, this claim will be dismissed *without prejudice* against all Defendants.

### C. Unlawful Seizure

Plaintiff alleges that Defendants unlawfully seized his property, including his cell phone, cash and other items, during the course of his arrest. (Am. Compl. ¶ 17). Plaintiff also alleges that Defendants unlawfully obtained his DNA through the use of a buccal swab without a warrant. (*Id.* ¶ 24).

The Fourth Amendment, binding on the states by the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The Supreme Court has held that:

> In light of the context of a valid arrest supported by probable cause respondent's expectations of privacy were not offended by the minor intrusion of a brief swab of his cheeks. By contrast, that same context of arrest gives rise to significant state interests in identifying respondent not only so that the proper name can be attached to his charges but also so that the criminal justice system can make

> informed decisions concerning pretrial custody. Upon these considerations the Court concludes that DNA identification of arrestees is a reasonable search that can be considered part of a routine booking procedure. When officers make an arrest supported by probable cause to hold for a serious offense and they bring the suspect to the station to be detained in custody, taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment.

*Maryland v. King*, 133 S. Ct. 1958, 1980 (2013). As stated by the Supreme Court, whether the DNA swab is reasonable under the Fourth Amendment depends on whether the arrest was supported by probable cause. Here, as discussed in the previous section, Plaintiff does not provide any information about the probable cause, or lack thereof, which existed at the time of his arrest. While it is clear that the swab of his cheek occurred after his arrest, Plaintiff has provided no other facts. Without such further factual allegations, the Court is unable to determine whether Plaintiff has sufficiently alleged a Fourth Amendment claim for unlawful seizure of his DNA. *See id.*; *Iqbal*, 556 U.S. at 678.

Similarly, there are insufficient facts to allege a claim for seizure of the property. Where a search or entry is lawful, the seizure of objects which an officer has probable cause to believe are evidence of a crime is also lawful under the Fourth Amendment. *Maryland v. Buie*, 494 U.S. 325, 330 (1990); *Arizona v. Hicks*, 480 U.S. 321, 326 (1987). While Plaintiff alleges that the seizure was done without probable cause, such an allegation is conclusory and insufficient under *Iqbal*. *See* 556 U.S. at 678. In addition, Plaintiff has provided no further information as to the location of the items and the underlying crime for which he was charged, other than to identify it as murder. As such, this claim will also be dismissed *without prejudice.*

### D. Excessive Force

Plaintiff alleges that Defendants used excessive force during their arrest of Plaintiff. "A cause of action exists under § 1983 when a law enforcement officer uses force so excessive that it violates" the Fourth Amendment's protection from unreasonable search and seizure. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633-34 (3d Cir. 1995). When a police officer uses force to effectuate an arrest, that force must be reasonable. *Id.* at 634 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The reasonableness of the force used is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396).

Here, Defendants argue that Plaintiff has failed to allege sufficient facts to state a claim for excessive force because he only states in a conclusory manner that he was "assaulted." (Mot. at 21). While the Court agrees that the broad, conclusory allegation that he was assaulted by all Defendants is insufficient to state a claim under *Iqbal*, *see*, *e.g.*, *Bradley v. Jersey City Police Dep't.*, No. 12-5236, 2013 WL 4606710, at *5 (D.N.J. Aug. 29, 2013) (dismissing excessive force claim due to "the absence of a fuller factual description, and where the only harm Plaintiff is alleged to have suffered is the discomfort of tight handcuffs"), Plaintiff does specifically allege that Defendant Hornyak spit on him (*see* Am. Compl. ¶ 17). Therefore, Defendants' motion is granted as it relates to the unspecified allegation of assault against all Defendants and denied as it relates to Defendant Hornyak's spitting on Plaintiff.[3]

---

[3] Because Defendants rely entirely on their arguments for dismissing Plaintiff's federal claims as the basis for dismissal of the New Jersey Civil Rights Act claims, their motion to dismiss Plaintiff's NJCRA claim against Defendant Hornyak for excessive force is also denied. All other NJCRA claims are dismissed for the same reasons

8

**E. § 1985 Conspiracy**

To state a claim under § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (citing *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983)). While the courts are "mindful that direct evidence of a conspiracy is rarely available and that the existence of a conspiracy must usually be inferred from the circumstances . . . , the rule is clear that allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 184-85 (3d Cir. 2009) (quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990)).

As correctly argued by Defendants, there are no allegations from Plaintiff which would indicate a conspiracy involving Defendant Verpent other than a conclusory statement that she agreed with the Defendants to cause Plaintiff's unlawful arrest. Therefore, any § 1985 claim regarding a conspiracy involving Defendant Verpent is dismissed *without prejudice*.

With regard to the other Defendants, while Plaintiff alleges that Defendants Hornyak and Anzilotti made several racist remarks to him during the interrogation and that they "emphatically stated that they agreed to violate plaintiff Sampson's constitutional rights because plaintiff Sampson was not white and was a minority in a majority white Bergen County" (Am. Compl. ¶

---

as their federal counterpart claims discussed herein. *See Szemple v. Corr. Med. Servs., Inc.*, 493 F. App'x 238, 241 (3d Cir. 2012) (the NJCRA is interpreted as analogous to § 1983).

9

21), Plaintiff does not allege which acts by these Defendants were undertaken in furtherance of the alleged conspiracy or how these Defendants violated his rights in accordance with the alleged conspiracy. *See Capogrosso*, 588 F.3d at 184-85. Based on the lack of specific allegations, the Court will dismiss this claim *without prejudice*.

### F. Right to Familial Integrity

Plaintiff alleges that his "Right to Familial Integrity" under 42 U.S.C. § 1983 was violated by all Defendants when they took Plaintiff's children into the custody of the Division of Child Protection and Permanency without satisfying the required legal standard. (*See* Am. Compl. ¶¶ 27, 38).

The Third Circuit has stated the following when evaluating this type of claim:

> To establish a substantive due process violation by a municipality, a plaintiff must show that executive action was so ill-conceived or malicious that it shocks the conscience. Specifically, a child welfare agency abridges an individual's substantive due process rights when its actions exceed both negligence and deliberate indifference, and reach a level of gross negligence or arbitrariness that indeed shocks the conscience. That standard is met if the child is removed without an objectively reasonable suspicion of abuse, based on the information available at the time. Absent such reasonable grounds, governmental intrusions of this type are arbitrary abuses of power. That is because a state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse. Reasonable suspicion is lacking when a child welfare agency has consciously disregarded a great risk that there had been no abuse.

*Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 241 (3d Cir. 2013) (internal citations and quotation marks omitted).

Defendants' motion to dismiss this claim will be granted. Beyond the conclusory statement that Defendant Verpent "obtained unlawful custody of plaintiff's minor children without satisfying the legal standard required" (Am. Compl. ¶ 27), which is woefully insufficient under *Iqbal*, the

10

Amended Complaint also states that upon the arrest of Ms. Pierro, Defendants requested that she place the child who was with her in the custody of an acquaintance (*id.* ¶ 12). Due to the conclusory nature of the allegations and the fact that the Amended Complaint also contained information indicating that Ms. Pierro was given the option to place her child in the care of an acquaintance when she was arrested, the Court finds that Plaintiff has not sufficiently alleged "conscience shocking" behavior by the Defendants. This claim will be dismissed *without prejudice*.

## IV.   CONCLUSION

Based on the foregoing, Defendants' motion to dismiss Plaintiff's Amended Complaint will be granted as it relates to all claims purportedly raised by Ms. Pierro, Plaintiff's false arrest claim, unlawful seizure claim, § 1985(3) conspiracy claim, and right to familial integrity claim. These claims will be dismissed *without prejudice*.[4] Defendants' motion is denied as it relates to Plaintiff's excessive force claim against Defendant Hornyak.[5] An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[4]   If Plaintiff wishes to address the deficiencies of these claims identified herein, he must file a proper motion to amend that complies with all federal and local rules.

[5]   The Court notes that Defendants raised the defense of qualified immunity to Counts I-IV of the Amended Complaint. (Mot. at 28-30). However, while Defendants include the standard for said immunity and summarily assert that they are entitled to it, they do not address it in the context of the specific claims raised by Plaintiff, including excessive force. As such, the Court will deny Defendants' motion on this basis *without prejudice* at this time.

Defendants' motion to dismiss all cross-claims by Defendant MacKay will be dismissed as moot because the Court has determined that all claims involving him fail to allege sufficient factual matter under *Iqbal* and have been dismissed.