**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHAEL SAMPSON**, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **BERGEN COUNTY PROSECUTOR'S OFFICE**, *et al.*, <br><br> Defendants. | Civil Action No.: 14-5983 (ES) (JSA) <br><br> **OPINION** |

**SALAS, DISTRICT JUDGE**

This action arises from an incident during which Defendant Joseph Hornyak, an undersheriff with the Bergen County Sheriff's Office, allegedly spit on Plaintiff Michael Sampson during an arrest. In connection with this incident, Plaintiff has brought claims for excessive force under (i) 42 U.S.C. § 1983 and (ii) the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6-1, *et seq*. (D.E. No. 18 ("Second Amended Complaint" or "SAC") ¶¶ 33–34 & 41–42).[1] Before the Court is Defendant Joseph Hornyak's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (D.E. No. 95). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court **GRANTS** summary judgment in Defendant's favor.

---

[1] Though Sampson's SAC brought numerous other claims against numerous other Defendants, the only claims that survived the motion to dismiss Sampson's SAC were Plaintiff Sampson's excessive force claims under 42 U.S.C. § 1983 and the NJCRA regarding Defendant Hornyak's alleged spitting. (*See* D.E. No. 28 ("Mar. 16, 2017 Op.")).

## I. BACKGROUND[2]

### A. Factual History

According to Plaintiff Sampson, on July 8, 2012, at approximately 1:30 p.m., Defendant Hornyak (an undersheriff with the Bergen County Sheriff's Office); Robert Anzilotti, Brian Griefer, and James McMorrow (detectives with the Bergen County Prosecutor's Office); and Sean MacKay (an officer employed by the Borough of Cliffside Park) conducted a traffic stop of Plaintiff Sampson's wife, Ms. Jacqueline Pierro, and Sampson and Pierro's child in Lodi, New Jersey. (SAC ¶¶ 3–6 & 12). The officers arrested Pierro and requested, under the threat of force, that she remove her child from the vehicle and place the child in the custody of an acquaintance. (*Id.* ¶ 12).

Thereafter, officers took Pierro to a "law enforcement building," where Defendant Hornyak and other officers interrogated her. (*Id.* ¶ 13). The officers allegedly threatened to take unlawful custody of the child if Pierro did not waive her right to remain silent and her right to an attorney. (*Id.* ¶ 14). Pierro subsequently waived her rights and answered the officers' questions. (*Id.* ¶ 15). The officers then used Pierro's statements to obtain arrest warrants for her and Plaintiff Sampson. (*Id.*).

That evening, the Bergen County S.W.A.T., which included Defendant Hornyak, unlawfully entered a Bergen County residence in which Plaintiff Sampson was residing. (*Id.* ¶ 16; Sampson Dep. at 16:11–17:8). The officers carried assault rifles and wore armor while they arrested him. (SAC ¶ 16; Sampson Dep. at 16:11–17:19). Plaintiff Sampson contends that, during his arrest, officers assaulted him while he was lying on his stomach, and Defendant Hornyak

---

[2] The Court gathers the following facts primarily from Plaintiff's Second Amended Complaint (SAC), Defendant's statement of undisputed material facts (D.E. No. 95-1 ("Def. SUMF")), Plaintiff's responses thereto (D.E. No. 100-1 ("Pl. Resp. SUMF")), and Plaintiff's Deposition. (D.E. No. 95-3 ("Sampson Dep.")).

allegedly spit on Plaintiff. (*Id*. ¶ 17). The officers seized Plaintiff's property, including a cell phone and cash. (*Id.*; Sampson Dep. at 17:9–19). In addition, the officers, in concert with Defendant Leticia Verpent, an employee of the New Jersey Division of Child Protection and Permanency, allegedly seized Plaintiff Sampson's child, who was at Sampson's residence at the time. (SAC ¶¶ 7 & 18).

Sampson testified that during his transportation to the Bergen County Prosecutor's Office, Defendant Hornyak, who was sitting next to him in the back seat of the car, made a number of threatening remarks to get him to "talk." (Sampson Dep. at 18:12–20:16; *see also* SAC ¶¶ 23–26). Sampson further testified that during the course of his transport, Defendant Hornyak once again spit on him. (*Id*. at 20:7–18; *see also* SAC ¶¶ 19 & 23). Sampson described the incident as follows:

> A: So I'm hot at this point. This guy is spitting. He's saying all this craziness . . . [W]e're still in the car, he's just acting completely deranged, talking about: 'If you don't talk, we're going to give you three million dollar bail.' Talking this nonsense, you know, saying ridiculousness about my wife and my kids. So at this point, I'm just trying to get his saliva off me. I'm mad.

(Sampson Dep. at 20:10–18). Sampson also alleged that Defendant Hornyak and another officer made several racist remarks and comments to Sampson, who provides that he is of "Dominican and Hispanic descent." (SAC ¶ 21). According to Sampson, Defendant Hornyak and another officer emphatically stated that they agreed to violate Plaintiff Sampson's constitutional rights because he was not white and was a minority in majority-white Bergen County. (*Id.* ¶ 21). The officers then seized Plaintiff's DNA through the use of a buccal swab without a warrant or consent. (*Id.* ¶ 24; Sampson Dep. at 22:9–17). According to Sampson, Defendant Hornyak explicitly stated that he would cause a judge to issue a $3,000,000 bail against Plaintiff if Plaintiff did not waive his constitutional rights. (SAC ¶ 25; Sampson Dep. at 20:7–16).

### B. Procedural History

On or around September 24, 2014, Plaintiff Sampson initiated this action *pro se* by filing a civil rights complaint asserting various claims, purportedly on behalf of himself, his wife, and their children, arising from the traffic stop and his arrest. (*See* D.E. No. 1). Initially, the Court administratively terminated the case because he had failed to pay the filing fee or apply to proceed *in forma pauperis*. (D.E. No. 2). Thereafter, Plaintiff Sampson submitted an amended complaint in November 2014 against Defendants Anzilotti, Griefer, Hornyak, McMorrow, MacKay, Verpent, the Bergen County Prosecutor's Office, the New Jersey Division of Child Protection and Permanency, Cliffside Park, and Lodi Borough Police Department (D.E. No. 4), and the Court reopened the matter in June 2015 after Plaintiff paid the filing fee.

On August 21, 2015, Defendant MacKay answered the complaint and asserted crossclaims against the other defendants. (D.E. No. 11). On August 28, 2015, Defendants Anzilotti, Griefer, Hornyak, McMorrow, Verpent, the Bergen County Prosecutor's Office, and the New Jersey Division of Child Protection and Permanency moved to dismiss the amended complaint and Defendant MacKay's crossclaims. (D.E. No. 12).

On September 11, 2015, Plaintiff filed his Second Amended Complaint, which is the operative complaint in this matter. (*See* SAC; D.E. No. 25). Accordingly, the motion to dismiss filed by Defendants Anzilotti, Griefer, Hornyak, McMorrow, Verpent, the Bergen County Prosecutor's Office, and the New Jersey Division of Child Protection and Permanency was terminated as moot. (*Id.*). The Second Amended Complaint asserts claims for false arrest on behalf of Plaintiff Sampson (Count I); unlawful seizure of property on behalf of Plaintiff Sampson and Ms. Pierro (Count II); excessive force pursuant to 42 U.S.C. § 1983 in violation of the Fourth Amendment on behalf of Plaintiff Sampson (Count III); conspiracy pursuant to 42 U.S.C. § 1985

on behalf of Plaintiff Sampson and Ms. Pierro (Count IV); violations of the right to familial integrity on behalf of Plaintiff Sampson and Ms. Pierro (Count V); violations of the right to due process on behalf of Ms. Pierro (Count VI); and violations of the NJCRA, N.J.S.A. §§ 10:6-1 to 10:6-2 on behalf of Plaintiff Sampson and Ms. Pierro (Count VII). The Second Amended Complaint names Hornyak, Anzilotti, Griefer, McMorrow, MacKay, Verpent, the Borough of Cliffside Park, and the Borough of Lodi, as defendants.[3] (*See* SAC).

On October 6, 2015, Defendants Anzilotti, McMorrow, Hornyak, Griefer, and Verpent (collectively, the "County and State Defendants") once again moved to dismiss. (D.E. No. 22).

On March 16, 2017, the Court granted-in-part and denied-in-part the County and State Defendants' motion. (*See* D.E. No. 28 ("Mar. 16, 2017 Op.")). The Court granted the motion as to all claims except Plaintiff's Fourth Amendment excessive force claim under 42 U.S.C. § 1983 and corresponding NJCRA claim in connection with Defendant Hornyak's alleged spitting on Plaintiff. (*See id.*). Thus, with respect to Defendant,[4] the only claims that survived were those for excessive force under 42 U.S.C. § 1983 (Count III) and the NJCRA (Count VII) regarding Defendant Hornyak's alleged spitting. (*See id.*; *see also* Pl. Resp. SUMF ¶ 7).

---

[3] As the Second Amended Complaint does not assert claims on behalf of Sampson's children, M.A.S., Jr. and A.P.S.—individuals that were named in the Amended Complaint—those individuals are no longer plaintiffs in this matter. Further, as the Second Amended Complaint does not assert claims against the Bergen County Prosecutor's Office or the New Jersey Division of Child Protection and Permanency—entities that were named in the Amended Complaint—those entities are no longer defendants in this matter. *See* Fed. R. Civ. P. 15(a); *West Run Student Housing Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013) ("[T]he amended complaint 'supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.'").

[4] In a footnote, the Court also indicated that the County and State Defendants' "motion to dismiss all cross-claims by Defendant MacKay will be dismissed as moot because the Court has determined that all claims involving him fail to allege sufficient factual matter . . . and *have been dismissed*." (*See* Mar. 16, 2017 Op. at 11 n.5) (emphasis added). The Court reiterates its prior decision and dismisses those claims without prejudice in the order accompanying this Opinion.

On September 14, 2017, Plaintiff Sampson moved for leave to file a third amended complaint. (D.E. No. 41). The Court ultimately denied Plaintiff's motion because he had not submitted a proposed amended pleading along with his motion. (D.E. No. 45).

On April 30, 2018, Plaintiff refiled a version of his Second Amended Complaint along with a proposed third amended complaint. (D.E. No. 46). Mindful of Plaintiff's *pro se* status, the Court construed Plaintiff's submission as another motion to amend. (D.E. No. 49). However, the Court denied Plaintiff's motion to amend without prejudice because the proposed third amended complaint did not cure the deficiencies noted in the Court's March 16, 2017 Opinion. (*Id.*).

On April 30, 2019, Plaintiff filed what the Court construed as a motion for leave to file a fourth amended complaint. (D.E. No. 54). Before the Court ruled on Plaintiff's motion for leave to file a fourth amended complaint, however, Plaintiff filed what the Court construed as a motion to compel discovery and for leave to file a fifth amended complaint. (D.E. No. 61). On November 26, 2019, the Court denied Plaintiff's motion for leave to file a fourth amended complaint as moot. (D.E. No. 63). On January 21, 2020, the Court denied Plaintiff's motion for leave to file a fifth amended complaint as futile because it once again did not cure the deficiencies noted in the Court's March 16, 2017 Opinion. (D.E. No. 67). This time, however, the Court appointed Plaintiff *pro bono* counsel, and the matter proceeded to discovery. (*See id.*).

Following discovery and an unfruitful settlement conference, Defendant Hornyak filed the instant motion for summary judgment. (*See* D.E. No. 95-2 ("Mov. Br.")). In the motion, Defendant Hornyak contends that the relevant statute of limitations bars Plaintiff Sampson's excessive force claim and that, in any event, Plaintiff Sampson has failed to set forth sufficient evidence to show that Defendant Hornyak was in the vehicle that transported him to the Bergen County Prosecutor's Office or that it was Defendant Hornyak who had spit on him during the trip.

(*See id.*).  Plaintiff Michael Sampson filed an opposition, (D.E. No. 100 ("Opp. Br.")), and Defendant Hornyak filed a reply.  (D.E. No. 101 ("Reply")).

On June 9, 2022, in response to the parties' briefing regarding the statute of limitations defense, the Court directed the parties to file supplemental letters addressing whether the so-called prisoner mailbox rule applies to save Plaintiff's claim.  (D.E. No. 102).  Defendant and Plaintiff submitted supplemental briefing on this issue on July 15, 2022.  (D.E. Nos. 106–07).  Defendant also submitted a reply to Plaintiff's supplemental briefing on July 22, 2022.  (D.E. No. 108).

On October 21, 2022, the Court instructed the parties to submit supplemental briefing on two issues that it raised sua sponte.  (D.E. No. 112).  Specifically, the Court instructed the parties to provide supplemental briefing on whether Defendant Hornyak's alleged spitting (i) constituted more than *de minimus* force and (ii) was volitional.  (*See id.*).  On November 10, 2022, Defendant Hornyak submitted supplemental briefing in accordance with the Court's October 21, 2022 Order. (*See* D.E. No. 113 ("Def. Suppl. Br.")).  Plaintiff and his counsel, however, failed to submit a timely response.  On February 21, 2023, Plaintiff filed an untimely *pro se* letter in response to the Court's October 21, 2022 Order.  (*See* D.E. No. 115 ("Pl. Suppl. Br.")).  On March 3, 2023, Defendant Hornyak responded to the letter, asking the Court to strike it as untimely and improperly filed since Plaintiff Sampson's counsel did not sign it.  (D.E. No. 116).

Finally, on April 14, 2023, the Court issued a notice of call for dismissal as to the Borough of Lodi and Borough of Cliffside Park for Plaintiff's failure to effect service of summons and the complaint pursuant to Fed. R. Civ. P. 4(m).  (D.E. No. 117).  After Plaintiff failed to show cause

7

as to why the Court should not dismiss these defendants, the Court dismissed them without prejudice on April 28, 2023. (D.E. No. 118).[5]

## II.     STANDARDS OF REVIEW

A court should grant summary judgment if the evidence in the record, viewed with all reasonable inferences in favor of the nonmoving party, demonstrates that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir. 1989). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The mere existence of an alleged disputed fact is not enough. *See id.* at 247–248. A fact is "material" if under the governing substantive law, a dispute about the fact might affect the outcome of the lawsuit. *Id.* at 248. Factual disputes that are irrelevant or unnecessary will not preclude summary judgment. *See id.*

At summary judgment, the Court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *Id.* at 249. The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. To satisfy this burden, the non-moving party "may not rest upon the mere allegations or denials of his pleading," Fed. R. Civ. P. 56(e), and he "must do more than simply show that there is some metaphysical doubt as to the material

---

[5] Subsequently, Plaintiff submitted a *pro se* letter to the Court regarding the notice of call for dismissal. (D.E. No. 119). Although the letter is unclear, it appears that Plaintiff claims that he had, in fact, effectuated service on the Borough of Lodi and the Borough of Cliffside Park in 2014 and that the entities entered their appearance. However, the docket bellies Plaintiff's contentions, and Plaintiff fails to point to any evidence that he served these defendants or that they entered an appearance.

facts." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993) (internal quotation and citation omitted).  The non-moving party must go beyond the pleadings and point to specific factual evidence showing there is a genuine material issue for trial.  *Celotex Corp.*, 477 U.S. at 323–24.  He must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F. 3d 480, 484 (3d Cir. 1995).  Speculation and conjecture will not suffice.  *See Jackson v. Danberg*, 594 F.3d 210, 227 (3d. Cir. 2010).

### III. DISCUSSION

The Court begins by addressing one of the issues that it raised sua sponte in its October 21, 2022 Order regarding whether Defendant Hornyak's alleged spitting was volitional.[6]  (D.E. No. 112).  As the Court concludes that the issue warrants summary judgment in favor of Defendant Hornyak, the Court does not reach the other issues Defendant Hornyak raises in his motion for summary judgment.

As noted above, the only claims against Defendant Hornyak that survived the Court's March 16, 2017 Opinion and Order are Plaintiff's claims for excessive force under 42 U.S.C. § 1983 (Count III) and the NJCRA (Count VII) as they relate to Defendant Hornyak's alleged acts of spitting.  For the reasons below, the Court concludes that the matter warrants summary judgment in favor of Defendant Hornyak on Plaintiff's claims for excessive force under 42 U.S.C. § 1983 (Count III) because Plaintiff Sampson fails to present evidence from which a reasonable jury could find that the acts of spitting occurred, or were volitional and performed for the purpose of acquiring

---

[6] Rule 56 of the Federal Rules of Civil Procedure permits a court to grant summary judgment on grounds not raised by a party after giving notice and a reasonable time to respond.  Fed. R. Civ. P. 56(f)(2); *Celotex Corp.*, 477 U.S. at 326.

physical control.  The Court declines to exercise supplemental jurisdiction with respect to Plaintiff's remaining claim under the NJCRA (Count VII).

Generally, "a cause of action exists under § 1983 when a law enforcement officer uses force so excessive that it violates" the Fourth Amendment's protection from unreasonable search and seizure.  *Groman v. Township of Manalapan*, 47 F.3d 628, 633-34 (3d Cir. 1995).  When a police officer uses force to effectuate an arrest, that force must be reasonable.  *Id.* at 634 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  The reasonableness of the force used is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* (quoting *Graham*, 490 U.S. at 396).

However, "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control."  *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989).  The acquiring of physical control need not occur in the manner originally intended by the police, but it must result from volitional police activity performed for the purpose of acquiring physical control over something or someone.  *See id.* ("A seizure occurs even when an unintended person or thing is the object of the detention or taking . . . but the detention or taking itself must be willful.  This is implicit in the word 'seizure,' which can hardly be applied to an unknowing act."); *Brice v. City of York*, 528 F. Supp. 2d 504, 514 (M.D. Pa. 2007) ("A plaintiff cannot maintain an excessive force [claim] against a defendant based upon the defendant's non-volitional acts."); *Troublefield v. City of Harrisburg*, 789 F. Supp. 160, 166 (M.D. Pa. 1992) ("[S]ome nature of volitional act on the part of the state actor must cause the harm to plaintiff for a [F]ourth [A]mendment excessive force claim to sound."), *aff'd sub nom. Troublefield v. City of Harrisburg*, 980 F.2d 724 (3d Cir. 1992).

Thus, before proceeding to analyze the reasonableness of police conduct under the Fourth Amendment, a court must first determine as a threshold inquiry whether the challenged police conduct constituted a volitional act performed for the purpose of acquiring physical control over someone. *Brice*, 528 F. Supp. 2d at 513.  Moreover, "[t]he requirement of volitional action is no less integral to the excessive force claim of a plaintiff already in police custody, and such a plaintiff must produce evidence of a volitional act sufficient to bring about a 'second seizure' of the plaintiff." *Id.* at 510.

For example, in *Brice*, the plaintiff filed a civil rights complaint asserting a Fourth Amendment excessive force claim against a city and several of its police officers after one officer's gun brushed up beside plaintiff's head and discharged as the officer assisted others in subduing plaintiff without holstering his weapon first. *See id*. at 507.  The court in *Brice* granted the officer's motion for summary judgment because the plaintiff failed to present any evidence that the officer had volitionally fired the gun. *See id.* at 513–514.

Here, Plaintiff Sampson claims that Defendant Hornyak spit on him on two occasions: after officers entered his residence and while en route to the Bergen County Prosecutor's Office.  (*See* SAC ¶¶ 17 & 23).  As to the former incident, Plaintiff simply fails to come forward with any evidence demonstrating that Defendant Hornyak spit on him.  For example, Plaintiff did not testify during his deposition regarding any spitting that occurred at his residence (*see* Sampson Dep. at 16:15–17:25), and Plaintiff points to no other record evidence to demonstrate that Defendant Hornyak spit on him at his residence.  (*See* Opp. Br. at 3).[7]

---

[7]     In fact, during his deposition, Sampson only testified as to the alleged spitting by Defendant Hornyak that occurred while Plaintiff was being transported to the Bergen County Prosecutor's Office. (Sampson Dep. at 18:12–21:25).  And when asked whether he had any other interaction with Defendant Hornyak other than what he went over in his deposition, Sampson testified: "No, not that I'm aware of."  (*Id.* at 34:6–10).

With respect to Defendant Hornyak's alleged spitting during the transportation of Plaintiff to the Bergen County Prosecutor's Office, the only evidence presented is Plaintiff's deposition testimony regarding a heated conversation between Defendant Hornyak and Plaintiff in the back seat of the police vehicle. (*See id.*). When asked "[w]ho had spit on you?[,]" Plaintiff stated, "[t]hat would be Hornyak." (*See* Sampson Dep. at 30:16–18). However, Plaintiff did not provide further details about the incident such that a reasonable jury could find that the spitting was volitional as opposed to an incidental effect of a heated discussion in a confined space. (*See id.* at 30:19–31:14).[8] Plaintiff further testified that another officer sitting in the front passenger seat "must have felt a couple of droplets himself," (*see id.* at 32:3–13), suggesting that the alleged spitting was incidental and not directed at a particular person.[9] Moreover, there is simply no record evidence from which a reasonable jury could conclude that Defendant Hornyak spit on Plaintiff Sampson for the purpose of acquiring physical control, even if the spitting was sufficient as a matter of law to bring about a "second seizure" of him.[10] *See Brice*, 528 F. Supp. 2d at 510, 513.

---

[8] As described above, Sampson described the incident as follows:
> A: So I'm hot at this point. This guy is spitting. He's saying all this craziness . . . [W]e're still in the car, he's just acting completely deranged, talking about: 'If you don't talk, we're going to give you three million dollar bail.' Talking this nonsense, you know, saying ridiculousness about my wife and my kids. So at this point, I'm just trying to get his saliva off me. I'm mad.

(Sampson Dep. at 20:7–18).

[9] To be sure, when asked "[W]hat pain and suffering are you alleging because of [Defendant Hornyak's spitting]?," Plaintiff responded: "You ever been tied up? Had an itch you couldn't scratch, wanting with all your will to reach for something you could not reach. Imagine all that *being deliberate*? Tying you up, spitting on you and you want to do anything and everything to just wipe it off your face." (Sampson Dep. at 41:5-13) (emphasis added). However, Plaintiff's vague assertion in his testimony that Defendant Hornyak deliberately spit on him, without providing further details or specifics about the incident, is conclusory and, therefore, insufficient to survive summary judgment. *See Paladino v. Newsome*, 885 F.3d 203, 208 (3d Cir. 2018) ("[C]onclusory, self-serving affidavits [or witness's testimony] are insufficient to withstand a motion for summary judgment.").

[10] On this point, the Court notes that, even if Plaintiff Sampson met his burden of demonstrating that the alleged spitting occurred and constituted a volitional act performed for the purpose of acquiring physical control, the matter nevertheless would warrant dismissal because the alleged acts of spitting, although regrettable if true, are *de minimus*.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396. "The force used must be more than a *de minimus* amount of force for a constitutional claim to arise." *Smith v. Cpl. Louriero*, No. 16-741, 2017 WL 2952819, at *5 (M.D. Pa. June 9,

Accordingly, the Court finds that Plaintiff Sampson fails to present evidence demonstrating that Defendant Hornyak's alleged acts of spitting were volitional and performed for the purpose of acquiring physical control over someone. As these constitute essential elements of his Fourth Amendment excessive force claims for which he bears the burden of proof at trial, *see id*. at 510, the Court concludes that the matter warrants summary judgment in favor of Defendant Hornyak on his excessive force claim under 42 U.S.C. § 1983. *See Celotex Corp.*, 477 U.S. at 322–23.

Upon dismissal of a plaintiff's federal claims, a district court may decline to exercise supplemental jurisdiction over any remaining state law claims. 28 U.S.C. § 1367(c)(3); *see also Kramer v. Kubicka*, 222 F. App'x 184, 186 (3d Cir. 2007). Because the Court dismisses Plaintiff's federal claim against Defendant under 42 U.S.C. § 1983, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claim against Defendant under the NJCRA.

## IV.     CONCLUSION

For the reasons stated above, the Court **GRANTS** summary judgment in Defendant's favor on Plaintiff Sampson's excessive force claims brought pursuant to 42 U.S.C. § 1983 (Count III) as it relates to Defendant Hornyak's spitting on Plaintiff. An appropriate Order follows.[11]

---

2017) *report and recommendation adopted sub nom. Smith v. Louriero*, No. 16-0741, 2017 WL 2926020 (M.D. Pa. July 7, 2017) (citing *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) ("[T]he application of de minimus force, without more, will not support a claim for excessive force in violation of the Fourth Amendment.")).

Here, the allegations of spitting are *de minimus* and do not constitute excessive force under the Fourth Amendment. *See Damiani v. Duffy*, 277 F. Supp. 3d 692, 698 n.4 (D. Del. 2017), *aff'd*, 754 F. Appx. 142 (3d Cir. 2018) (noting that allegations that an officer "wound up and spat at Plaintiff" were *de minimus* and did not violate Plaintiff's constitutional rights, including under the Fourth Amendment).

[11]     Following the instant motion for summary judgment, and notwithstanding that he was then represented by counsel, Plaintiff Sampson submitted a *pro se* motion for leave "to amend and consolidate all complaints" along with a proposed sixth amended complaint. (*See* D.E. No. 96). Plaintiff Sampson then filed another series of letters with the Court on June 8, 2023. (D.E. No. 120). However, as these submissions were not personally signed by the attorney

13

Dated: July 7, 2023 　　　　　　　　　　　　　　　　　　　*s/ Esther Salas*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Esther Salas, U.S.D.J.**

---

of record representing Plaintiff Sampson the Court directs the Clerk of the Court to strike them as improperly filed. *See* Fed. R. Civ. P. 11(a).

14